IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

_____

| | | |
|---|---|---|
| JOSEPH R. MARSHALL, | ) | Cause No. CV 07-93-GF-SEH-RKS |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| MIKE MAHONEY; ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| MONTANA, | ) | |
| | ) | |
| Respondents. | ) | |

_____

On September 18, 2007, Petitioner Joseph R. Marshall filed this action seeking a writ of habeas corpus under 28 U.S.C. § 2254. He also filed a Memorandum in Support. The Court has jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254. Petitioner is a state prisoner proceeding pro se.

**I. Preliminary Screening**

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Id.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

If summary dismissal is not warranted, the judge must order the respondent to file an answer, motion, or other response or "to take other action the judge may order." Id.

**II. Background**

> The following facts are taken from the opinion of the Montana Supreme Court:
>
> In the Fall of 2003, Marshall moved into the trailer next door to J.M., the victim, then eleven years old, and S.M., J.M.'s sister, who was nine years old. J.M. and S.M. had a shaky home life, and soon began spending a good deal of time at Marshall's house. Eventually, they established a routine with Marshall. On Tuesdays they ate dinner at Marshall's, on Fridays they watched movies at his house, and on Sundays he took them to McDonald's for breakfast. Additionally, Marshall would often give the girls ten to fifteen dollars for clothes, supplies and the like, and provided both the girls an "allowance" if they were well behaved. Marshall also kept soft drinks and snacks at his house for the girls.
> 
> Early in the summer of 2004, when the girls were visiting, Marshall called to the girls, and when they looked at Marshall he had his penis hanging outside his pants. Sometime later in the summer, J.M. asked Marshall if he would give her $150. He responded by asking what she was going to do for the money: "[a]re you going to strip for me?" he asked. He also asked to see her crotch and, according to S.M., proposed to lick her crotch. J.M. turned down the offer and left with her sister.

State v. Marshall, 165 P.3d 1129, 1130-31 ¶¶ 5-6 (Mont. 2007).

On July 16, 2006, Petitioner was charged with one felony count of attempted sexual abuse of children, a violation of Mont. Code Ann. §§ 45-4-103 and 45-5-625, and one misdemeanor count of indecent exposure, a violation of Mont. Code Ann. § 45-5-504.[1] See Appellant Br. at 1, State v. Marshall, No. DA 06-0151 (Mont. Sept. 13, 2006).[2]

After his arrest, Petitioner agreed to a videotaped interview with the police. He admitted that, in the two-month period before his arrest, he told J.M. they should stop hanging out together because

---

[1] He was also charged with felony sexual assault based on facts not set forth here. The jury acquitted him on that count.

[2] This document is available at http://fnweb1.isd.doa.state.mt.us/idmws/custom/SLL/SLL_FN_home.htm.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

"I'm ready to pour honey over you and lick you like a popsicle." He demonstrated how he "humped" a countertop in front of J.M. and a friend of hers to simulate orgasm. He also "admitted that the girls' maturing bodies, especially J.M.'s, had started to turn him on." Marshall, 165 P.3d at 1131 ¶ 7. The videotape was shown at trial.

On October 25, 2005, a jury found Petitioner guilty. On January 31, 2006, Petitioner was sentenced on the attempted sexual abuse charge to serve fifteen years in prison, with ten years suspended. He was sentenced to serve six months for indecent exposure. See Appellant Br. at 4.[3]

Petitioner appealed his conviction for attempted sexual abuse, arguing that the "humping" incident and his "honey" remark were evidence of prior bad acts and were erroneously admitted. He also argued that the evidence was not sufficient to support the conviction. On August 14, 2007, the Montana Supreme Court affirmed his conviction. See Marshall, 165 P.3d at 1130 ¶ 1; id. at 1134, ¶ 30.

On August 23, 2007, Petitioner wrote a letter to appellate counsel Chad Wright, stating:

Hi Chad:
Hope things are going well for you?  I was thinking over the weekend, and do you think I should appeal to the next higher court?  Please let me know O.K.
    Sincerely
    Joe Marshall

Mem in Supp. (doc. 2) Ex. A at 1. Petitioner states that counsel responded by saying he did not see any grounds to ask the Montana Supreme Court to reconsider its decision. See Mem. in Supp. at 3.

On September 18, 2007, Petitioner filed his petition in this Court.

### III. Petitioner's Allegations

---

[3] The Court has no information as to whether this sentence was imposed to run consecutive to or concurrent with the felony sentence.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

Petitioner contends, first, that counsel "refused to file an appeal on the petitioner's behalf," Pet. (doc. 1) at 5, ¶ 12A, and he refers to the attached memorandum. Second, petitioner claims that counsel's failure to appeal his sentence violated his right of access to the courts. See id. ¶ 12B (referring again to the attached memorandum). Third, he asserts a violation of his right to direct appeal because counsel did not appeal his sentence. See id. at 6, ¶ 12C (again referring to the attached memorandum). Fourth, he contends that the Montana Supreme Court's decision constitutes double jeopardy. See id. ¶ 12D.

## IV. Analysis

Petitioner's belief that he was deprived of an appeal seems to spring from his misunderstanding as to what the Montana Supreme Court decided. Consequently, his last-stated ground for relief is addressed first.

### A. Double Jeopardy

Petitioner does not understand what happened in his case. It is true that the Montana Supreme Court first set forth Petitioner's claims and then said, "We affirm." It is understandable that a layman might construe the juxtaposition of the sentences to mean that the Montana Supreme Court agreed with the Petitioner's arguments. That is not the case. An appeal is a challenge to the judgment entered by the trial court. See Black's Law Dict. 59 (7th ed. 1999) (defining "affirm" as "[t]o confirm (a judgment) on appeal" (parentheses in original)). The Montana Supreme Court announced its decision in the conventional manner. When it said "We affirm," it meant "We affirm the judgment entered by the trial court." There is no error, no double jeopardy issue, and no doubt on this point. Petitioner's fourth ground for relief should be denied.

**B. Right to Appeal**

Petitioner's first three claims allege that he was deprived of an opportunity to appeal. "A lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).

The only facts Petitioner alleges in support of his claim consist of his letter to counsel, see Mem. in Supp. Ex. A, and his contention that counsel responded by saying that he saw no grounds to ask the Montana Supreme Court to reconsider. The letter, however, shows that Petitioner *asked* counsel – without mentioning his sentence – whether he thought appeal to a "higher court" was a good idea. Counsel responded that he saw no grounds for reconsideration by the Montana Supreme Court.

Nothing in the record before the Court remotely suggests that counsel's advice was unreasonable. Counsel obviously consulted with Petitioner about an appeal, because one was fully prosecuted. A motion to reconsider is appropriate only if "some fact, material to the decision, or some question decisive of the case submitted by counsel, was overlooked by the court, or . . . the decision is in conflict with an express statute or controlling decision to which the attention of the court was not directed." Mont. R. App. P. 34. There is no indication that such was the case. This Court perceives no issue that might support a petition for *certiorari* to the United States Supreme Court. The transaction rule is Montana's statutory expression of the common-law doctrine of *res gestae*. See Mont. Code Ann. § 26-1-103 (2007); State v. Hansen, 989 P.2d 338,352-54 ¶¶ 72-81 (Mont. 1999) (discouraging use of the imprecise common-law term). In its application, there was no hearsay or confrontation problem to trigger the United States Supreme Court's interest. See

Burgett v. Texas, 389 U.S. 109, 113-14 (1967). Finally, the evidence was plainly sufficient to support the conviction. See Jackson v. Virginia, 443 U.S. 307, 324 (1979) (petitioner is entitled to relief only if "upon the record evidence introduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.").

As for the sentence of fifteen years with ten suspended, a competent attorney might reasonably decide not to challenge it in a case where his client demonstrated a pattern of conduct aimed at seducing pre-teen girls. See Roe, 528 U.S. at 1035; see also Rule 1, Rules of the Sentence Review Division of the Montana Supreme Court (providing for equitable review of sentences and authorizing judges of the Division to decrease, affirm, or increase the sentence). Further, trial counsel, not appellate counsel, is responsible for pursuing sentence review. See Rule 1, Sentence Review Rules.

The facts Petitioner alleges do not even suggest that his right to appeal was impaired in any way. His first three claims should be denied.

## V. Certificate of Appealability

### A. Governing Law

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability ['COA'] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." See Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner ... "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

Lozada v. Deeds, 498 U.S. 430, 432 (1991) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4

(1983)).  See also Slack v. McDaniel, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").  Any doubt as to whether a petitioner has met the standard is resolved in his favor.  Id.  The COA must indicate which issues satisfy the required showing, 28 U.S.C. § 2253(c)(3), and the Court must "state why a certificate should not issue."  Fed. R. App. P. 22(b)(1).

**B. Discussion**

Petitioner complains that his attorney refused to file an appeal, but his complaint arises from a misunderstanding of what the Montana Supreme Court affirmed when it said "We affirm."  The court affirmed the trial court's judgment, not Petitioner's arguments.  Petitioner – who had his direct appeal – does not allege any facts showing that he was deprived of an appeal.  A COA should be denied.

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

The Petition (doc. 1) should be DENIED.  The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.  A certificate of appealability should be DENIED.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND
CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions

of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

<u>Petitioner must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u>  Failure to do so may result in dismissal of his remaining claims.

DATED this <u>15th</u> day of May, 2008.

/s/ Keith Strong<br>
Keith Strong<br>
United States Magistrate Judge